HILL v. STATE.

No. A-11886.

Criminal Court of Appeals of Oklahoma.

Feb. 3, 1954.

O. B. Martin, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, Judge.

This is an appeal from a conviction sustained in the District Court of Stephens County, wherein the defendant was sentenced to serve a term of four years in the state penitentiary for the offense of attempting to obtain narcotic drugs by use and means of a forged prescription.

It is contended that the information was duplicitous and that the court therefore erred in overruling the demurrer to the information and further erred in failing to require the state to elect on which charge it would try the defendant, whether on the crime of forgery or of attempting to utter and pass a forged prescription.

This prosecution was instituted under the provisions of the Uniform Narcotic Drugs Act, which among other provisions made it a felony to attempt to obtain a narcotic drug by the forgery or alteration of a prescription. Title 63 O.S.1951 § 417. The information charged that the defendant "on or about March 15, 1952, did commit the crime of attempting to obtain narcotic drugs by forgery, a second and subsequent offense in the manner and form as follows, to-wit: * * *."

 Thereafter, the information sets out in detail the means by which the alleged crime was committed, and included in the information is a copy of the narcotic prescription which it is alleged the defendant forged and uttered. If this had been a charge of forgery under the provisions of the chapter on forgery, Title 21 O.S.1951 §§ 1561 to 1626, inclusive, there would have been considerable merit to this assignment of error. However, this is not a charge of forgery. The charge is attempting to obtain narcotic prescriptions under a section of the statute in the Uniform Narcotic Drugs Act, penalizing the attempting to obtain narcotic drugs by certain means, one of which is through forgery of a prescription. We think the construction of this information is controlled by what was said in the case of Bowman v. State, 82 Okl. Cr. 199, 167 P.2d 663, 666, wherein this court stated:

"Counsel contend that this information is bad for duplicity, in that it charges two separate and distinct offenses in one count.

"The information does not charge two offenses. It only charges the commission of one offense, to-wit, man-

slaughter in the first degree, but it does allege different acts which were committed by the defendant which would constitute the offense of manslaughter in the first degree.

"In Moore v. State, 58 Okl.Cr. 122, 50 P.2d 746, 747, it is stated: 'Where a statute defines an offense and enumerates and describes the different acts or things which constitute the offense, all the said acts may be charged in a single count conjunctively, since though each by itself may constitute the offense, all together do no more, and constitute but one and the same offense.'

"In Huckleberry v. State, 64 Okl.Cr. 396, 81 P.2d 493, 494, it is held: 'Under a statute which defines a single crime, but which may be committed in a number of different ways, an information may be drawn setting out the different ways in a single count, and will not be duplicitous, if there is readily perceived connection between the things charged.'

"The test seems to be whether information charges more than one crime or whether it defines a single crime which may be committed in a number of ways. If it charges more than one crime in one count, the information would be bad for duplicity, but it is permissible to charge a single crime and set forth different acts which may constitute the manner and way in which the accused allegedly committed the offense."

It is our conclusion that the information charges the one crime of attempting to obtain narcotic drugs in an unlawful manner, and the various acts set forth in the information constitute the manner and way in which the accused allegedly committed said crime.

It is next asserted in the brief of the accused that the evidence was insufficient to sustain the conviction for the reason that there was no proof that defendant uttered the forged instrument as alleged in the information.

To "utter" as that word is used in forgery cases is to offer, directly or indirectly, by words or actions, such document as good and valid. Ballentine's Law Dictionary, 2d Ed.

In Black's Law Dictionary, 3d Ed., it is stated:

"To utter, as used in a statute against forgery and counterfeiting, means to offer, whether accepted or not, a forged instrument, with the representation, by words or actions, that the same is genuine."

The proof of the State showed that on the night in question, the defendant entered a drugstore in the city of Duncan and handed the forged prescription to a clerk, who in turn handed it to the owner of the drugstore to be filled. The owner of the drugstore testified that he immediately saw that the purported signature of Dr. W. R. Cheatwood on the prescription was a forgery and he notified the officers, who arrested the accused after he had left the drugstore without the prescription being filled. After the prescription had been presented, the defendant said to the druggist, "This will do me more good than the goof balls I have been taking."

When the druggist refused to fill the prescription and went to the telephone to call the police, the accused left the drugstore.

The defendant did not testify and offered no evidence in his behalf. In the case of Jones v. State, 69 Okl.Cr. 244, 101 P.2d 860, 863, this court held:

"To utter a forged instrument is to put it in circulation, or to offer to do so, with fraudulent intent to injure another."

We think the circumstantial evidence was entirely sufficient to sustain the conviction. The proof showed defendant in possession of the forged prescription. He presented it to the druggist to be filled. A strong circumstance indicating his knowledge of the false character of the prescription was the fact that when the druggist refused to fill the prescription and walked to the telephone for the purpose of calling the officers, the accused fled from the store. The handing of the forged prescription to the druggist to be filled was an uttering as that term is hereinabove defined.

It is next contended that the court erred in giving instruction No. 4 for the reason that said instruction told the jury the maximum punishment they could inflict, but did not instruct them as to the minimum punishment that could be assessed the accused in case of a conviction, citing in support of his contention Colbert v. State, 4 Okl.Cr. 487, 113 P. 561, and Mead v. State, 65 Okl.Cr. 86, 83 P.2d 404.

The instruction followed the language of the statute, which provides:

"Whoever violates any provision of this Act shall upon conviction be fined not more than One Thousand Dollars ($1000.00) or be imprisoned not more than five (5) years, or by both such fine and imprisonment. For a second offense, or if in case of a first conviction of violation of any provision of this Act, the offender shall previously have been convicted of any violation of the laws of the United States or of any other state, territory or the District of Columbia, relating to narcotic drugs or marihuana, the offender shall be fined not more than Three Thousand Dollars ($3000.00) or be imprisoned not less than five (5) or more than ten (10) years. * * *" Title 63 O.S.1951 § 420.

Although the proof showed that the accused had been convicted of a violation of the narcotic laws. in the United States District Court, the jury did not find him guilty of committing a second offense. For a conviction of a first violation of the act, the convicted person may be fined not more than $1,000 or may be imprisoned not more than five years, or may be assessed both fine and imprisonment within such limitations. No minimum is provided in the statute. If the jury had wished to do so, the accused could have been assessed as little as a ten cent fine or one hour in prison. The court, under this statute, could not instruct as to any minimum because there is no minimum punishment fixed by the statute. For that reason, this case is distinguishable from the two cases cited by defendant in his brief, because in those cases there was a minimum punishment for the crime charged to have been committed by the accused and the trial court, through inadvertence in each of those cases, failed to submit the minimum or alternative punishment.

We shall consider the last two propositions of the defendant together. It is contended that the judgment and sentence does not conform to the verdict of the jury and that the punishment assessed by the court was excessive. The jury by its verdict found the defendant "guilty as charged in the information of the crime of attempting to obtain narcotic drugs, and being unable to agree upon the punishment, leave the same to be assessed by the court."

In pronouncing judgment and sentence, the court recited that defendant had been tried by a jury which found him guilty of the offense of attempting to obtain narcotic drugs by forgery and defendant was sentenced to serve four years imprisonment in the penitentiary. In this connection the record discloses that no objection was interposed to the verdict at the time it was received, and this assignment of error was not included in the motion for a new trial, nor is it set forth in the petition in error attached to the case-made on appeal. Under such circumstances, the accused may not now complain of the insufficiency of the verdict unless it is so wholly insufficient as to fail to confer jurisdiction upon the trial court to assess the punishment which was inflicted.

In Smith v. State, 83 Okl.Cr. 392, 177 P.2d 523, this court held:

"Where verdict is irregular in form but is not objected to at time it is returned, and court given opportunity to have jury correct it, every intendment will be indulged to uphold it, and, where from examination of verdict and entire record intent of jury as expressed in verdict may be clearly ascertained, it will be upheld."

In Dunbar v. State, 75 Okl.Cr. 275, 131 P.2d 116, it was held that in order to determine the intention and the purpose of the jury as expressed in the verdict, the entire record would be examined, and in many other cases it has been held that a verdict will not be void if its meaning can

be determined by reference to the record proper. Bayne v. State, 72 Okl.Cr. 52, 112 P.2d 1113.

It is our conclusion that the verdict is not in proper form, and of course if counsel for the accused had objected to it at the time it was returned, it would have been error for the court to have accepted the verdict without returning it to the jury for clarification. Nowhere in the record, including the instructions of the court, was there ever any contention that there was such a crime as attempting to obtain narcotic drugs. The information, opening statement of the county attorney, the evidence, and the instructions of the court all clearly informed the jury that the case was one involving "attempting to obtain narcotic drugs by forgery." While the verdict is defective, its language, when considered with the record proper, is sufficient as we view it to express the intention and purpose of the jury to find the defendant guilty of attempting to obtain narcotic drugs by forgery, as charged in the information, and where no objection was interposed to the verdict when returned so as to call the attention of the court to its defective form, the defendant waived the defects in the form of the verdict.

As above disclosed, the jury did not fix the punishment, but left the same to be determined by the court. Although the proof of the State showed that the accused had been convicted in Criminal Case No. 16230 in the United States District Court for the Western District of Oklahoma of forging a narcotic prescription and sentenced to 18 months imprisonment, the jury did not, in conformity to the evidence, find him guilty of attempting to obtain narcotic drugs by forgery, a second offense, under which the court would have been obligated to have given him not less than five years nor more than ten years imprisonment.

Under such circumstances, this court would not be justified in modifying the sentence which was imposed by the trial court, unless it is clear that there was a manifest abuse of discretion, which we are unable to find.

The judgment and sentence of the District Court of Stephens County is accordingly affirmed.

POWELL, P. J., and BRETT, J., concur.