Loyd LENARD, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–259.

Court of Criminal Appeals of Oklahoma.

Aug. 13, 1990.

Opio Toure, Deputy Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Vice Presiding Judge:

Loyd Lenard was convicted of two counts of Incest (21 O.S.1981, § 885) after a trial by jury in the District Court of Comanche County, Case No. CRF–84–385. The jury recommended a sentence of ten (10) years per count and Appellant was sentenced accordingly. The trial court directed that the sentences should run consecutively. Appellant has properly perfected his appeal.

The evidence presented at trial established that Appellant had been having intercourse with two of his daughters about twice a week for a number of years. He began having sex with each girl when she turned thirteen. One of the daughters became pregnant when she was fifteen. She testified at trial that Appellant was the father of her child.

Appellant testified that he had never had sex with any of his daughters. He testi-

fied that it would have been impossible for him to have been the father of the child. He claimed that the girls were lying in retaliation for his having been a firm disciplinarian.

■ Appellant's first claim of error concerns the admission into evidence of the results of blood testing which determined that there was a high statistical probability that Appellant was the father of the baby. In support of his argument, he cites our opinion in *Brown v. State*, 751 P.2d 1078 (Okl.Cr.1988), in which we noted the inherent danger in the use of statistical figures to support conclusions extrapolated during the analysis of hairs recovered from crime scenes and from crime victims. The concerns expressed in *Brown* with regard to the science of hair comparisons and the uncertainties of the present technology are not valid in the present case.

In *Plunkett v. State*, 719 P.2d 834 (Okl. Cr.1986), we discussed the use of statistical evidence when determining the relative merit of test results obtained through analysis of body fluids by electrophoresis. We held that "[g]iving the factfinder a figure for the probability of certain blood characteristics, which probability is based upon scientifically reliable data, is clearly probative, the value of which outweighs the prejudice to the appellant." *Id.* at 841.

In the present case, we are not dealing with statistical probabilities in the abstract sense as we were in *Brown*. Instead, we have before us statistics which have been determined as the direct result of scientific testing. The actual testing of the blood taken in individual cases is meaningless without reference to the reference statistics. The situation in *Brown* concerned the propriety of testimony relating test results which were sufficiently probative to stand alone to statistical probabilities which have not been widely accepted. We held that the probative value of such evidence in that case was outweighed by its prejudicial effect.

We do not find this to be true in the present case. We find that the blood test commonly used to determine whether a man may be the father of a particular child,

the Human Leukocyte Antigen Tissue Typing Test (HLA), has been accepted in Oklahoma as a legitimate, reliable test which has gained general acceptance and recognition in the scientific community. *See Shipp v. State*, 713 P.2d 10, 11 (Okla.1986); *Callison v. Callison*, 687 P.2d 106, 111 (Okla.1984). The State properly offered the evidence of the acceptance of the test and the trial court determined that the evidence was more probative than prejudicial. Appellant was provided with ample opportunity to attack the credibility of the State's expert, which he attempted through extensive cross-examination. The determination of the weight and credibility to be afforded the test results and the opinion testimony was properly placed with the jury. *See Kennedy v. State*, 640 P.2d 971, 978 (Okl.Cr.1982). The State established a proper foundation for the admission of the evidence and the court performed the necessary balancing test. There is no error identified here.

■ In his second proposition of error, Appellant claims that the admission of evidence that he physically abused his wife and daughters violated the rule established by this Court in *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979) (overruled on other grounds 772 P.2d 922 (Okl.Cr.1989), against the admission of "other crimes" evidence. At the outset, we note that Appellant failed to object to the admission of the evidence and in fact, cross-examined the witnesses extensively concerning the abuse. Accordingly, all but fundamental error is waived. *Godbey v. State*, 731 P.2d 986 (Okl.Cr. 1987); *Hamby v. State*, 720 P.2d 345 (Okl. Cr.1986).

We have reviewed the record before us and do not find that fundamental error occurred. Appellant testified that he did not commit the crimes against his daughters. His wife, the girls' mother, testified that although one daughter told her of the sexual abuse, she chose to believe the girl's retraction, which came after a confrontation with Appellant. Both girls testified that they were very afraid of their father because he beat them and their mother. We find that the evidence of the physical

**638**

abuse was relevant to show why the girls did not report the crimes sooner and to explain why one of the girls later told her mother she had lied after having confided in her. There is no error requiring reversal identified here.

■ As his final allegation of error, Appellant claims that several statements made by the prosecutor during her closing argument constituted reversible error. Once again we will review only for fundamental error since Appellant did not object to any of the statements at trial. *Thomason v. State*, 763 P.2d 1182 (Okl.Cr.1988). *Smith v. State*, 737 P.2d 1206 (Okla.Cr. 1987); *cert. denied* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987). We have examined the statements at issue and find that only one warrants attention.

During the beginning of her closing argument, the prosecutor stated that "reasonable doubt does not mean beyond any doubt or beyond a shadow of a doubt." We have held previously that this comment is not error. It is merely an attempt by the prosecution to dispel commonly held attitudes rather than an attempt to define reasonable doubt. We are unable to agree that reversible error has occurred. *Nguyen v. State*, 769 P.2d 167, 171 (Okl.Cr. 1988); *Stringfellow v. State*, 744 P.2d 1277, 1279 (Okl.Cr.1987); *Diaz v. State*, 728 P.2d 503, 511 (Okl.Cr.1986); *Underwood v. State*, 659 P.2d 948, 950 (Okl.Cr.1983); *Johnson v. State*, 632 P.2d 1231, 1233 (Okl. Cr.1981).

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence AFFIRMED.

PARKS, P.J., and LUMPKIN and JOHNSON, JJ., concur.

BRETT, J., concurs in result.